## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

YOLANDA C. GIBSON-MICHAELS    )
      **Plaintiff,**                )
                            )
      **v.**                    ) Civil Action Nos.1:06CV-1938
                            ) Doc. Nos.: 5, 6, 13,18, 19, 23, 24, 25, 26
SECURIGUARD INCORPORATED et.al. )
      **Defendants**             )

### PLAINTIFFS MOTION TO VACATE JUDGE RICARDO M. URBINA'S ORDER DATED MAY 3ʳᵈ, 2007

Now Comes, Yolanda C. Gibson-Michaels (prose), Plaintiff in the above-entitled complaint, files a **Motion to Vacate Judge Ricardo M. Urbino's Order Dated May 3ʳᵈ, 2007** under docket numbers 5, 6, 13,18, 19, 23, 24, 25, 26 against named Defendants. Plaintiff filed **statutory-based claims in violations of §18 U.S.C. 119, § 2701, ("Section 2701"), 18 U.S.C. § 2511, and *18 U.S.C. 51*,** "Conspiracy to injure persons in exercise of civil rights", and 18 U.S.C. 52, Depriving citizens of civil rights under color of state laws. Plaintiff also filed a Motion to Suppress Evidence and Injunctive Relief.

## I. Certification by the Court

The U.S. District Court had a duty to ***apply Rule 5.1***. Constitutional Challenge to a Statute - Notice, Certification, and Intervention before issuance of a ruling,  states that **the court must, under 28 U.S.C. § 2403, certify to the Attorney General of the United States that there is a Constitutional challenge to a Federal Statute**.

## II. Intervention- Final Decision on the Merits

The rules states that: "Unless the court sets a later time, the attorney general may intervene within 60 days after the notice of **constitutional question is filed** or after the **court certifies the challenge**, whichever is earlier. Before the time to intervene expires, the court may reject the constitutional challenge, **but may not enter a final judgment holding the statute unconstitutional.**   No Forfeiture. A party's failure to file and serve the notice, or **the court's failure to certify**, does not forfeit a constitutional claim or defense that is otherwise timely asserted."

The U.S. District Court has a duty to follow provisions which required that: In such a proceeding from any court of the United States, as defined by 28 U.S.C. § 451, the initial document also shall state whether that court, pursuant to 28 U.S.C. § 2403(a), certified to the Attorney General the fact that the **Constitutionality of an Act of Congress was drawn into question**. See Rule 14.1(e)(v).  Plaintiff complaint provided evidence of statutory, constitutional, and violations of law.  The wiretap statute provides that an **aggrieved may recover in accordance to 18 U.S.C. Section 119 - § 2510**. An **aggrieved person**" means **a person who was a party to any intercepted wire, oral, or electronic communication** or a **person against whom the interception was directed**; See **§ 2521. Injunction.**  Probable cause instructs a magistrate judge that **baseless searches shall not proceed**. See *U.S. v. U.S. District Court*, 407 U.S. at 316.

1.    Patricia Del Marvil, CEO, Securiguard and USEC Services Corporation CEO David Marvil are both negligent by its failure properly conduct a background check prior to the its employment of Douglas R. Fahey (Defendant) case no. **06-cv-1933**.

## I. **Misapplication of Negligence and Defamation Claims**

Plaintiff's claims of **Negligenc Pro se**, **Defamation Pro se** and an **unauthorized Interception of Oral Communications** are violations of the Omnibus Crime Control and Safe Streets Act of 1968. Title III, §§ 801–804, 82 Stat. 211, 9-7.100, Oral, Wire, Electronic Interception Orders; Privacy Act, 5 U.S.C. § 552a. Federal Trade Commission Act (FTCA) § 618. Courts mandate as a matter of law that a violation of the statute will constitute negligence per se.

A violation of the statute requires the Court to apply principals of **Negligence per se** and **Defamation per se** in its application of the rules of law. See Randall David Fischer v. Mt. Olive Lutheran Church, et al. 207 F. Supp.2d 914 (W.D. Wis., March 28, 2002). Courts have ruled that a dismissal without an Evidentiary Hearing offends due process is a "Reversible Error". See, Haines vs. Kerner, 404 US 519 (1972) 405 US 948 (1972).

The Supreme Court declared that a Federal court may not apply a heightened pleading standard to a complaint alleging statutory violations. See Branch v. Tunnell, 14 F.3d 449, 450, (9th Cir. 1994). Courts have ruled that a plaintiff may prevail when deprived of rights secured by the United States Constitution or Federal Statutes. U.S.Const. Amended. XIV, §1. The Fourteenth Amendment Due Process clause is a limitation on state power, while the Fifth Amendment Due Process clause limits Federal power. Halinger v. Davis, 146 U.S. 314, 319 (1892). Paul v. Davis, 424 U.S. 693, 701 (1976).

The U.S. Supreme Court, Justice White has ruled that: **"the burden is on those seeking an exemption from the Fourth Amendment warrant requirement to show the need for it. See 457 U.S. 922 Lugar v. Edmondson Oil Co., Inc. (1982)."**

The Supreme Court decisions concerning the constitutional prohibition against government defamation to and including by third parties (contractors) does not alter or extinguish a right or status previously recognized by state law. See U.S. at 711. See Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 898 (1961).

Plaintiff established that she is an aggrieved is defined by 18 U.S.C. – Section 119 § 2510, "aggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed; See § 2521.

## II.    <u>Plaintiff Established Defamation Per Se</u>

Plaintiff's original complaint provided evidence, statute, case law, and facts to support that Defendant Douglas Fahey (unlicensed) impersonated a United States Federal investigator (Acting Under the Color of Law) by which he stated Plaintiff caused Johnson (Defendant) a so-called "Feeling of Threat"  See Phipps v. Clark Oil & Ref. Corp., 408 N.W.2d 569, 573 (Minn. 1987).  Securiguard and USEC Services Cororporation

Plaintiff established **Negligence Per Se and Defamation Pro se**. The statute provides an aggrieved injunctive relief, treble award of damages, punitive damages, declaratory relief, suppression of evidence, penalties, fines, civil liability, criminal liability and sanctions; among other remedies.

5

A motion to dismiss under Rule 12(b) (6) should be granted only if it appears beyond doubt that no relief could be granted under any set of facts that could be proved consistent with the allegations. See H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989). Courts have ruled that a motion to dismiss is not whether plaintiff will ultimately prevail but [whether the claimant is entitled to offer evidence to support the claims in which all allegations within her Complaint must be taken as true]. See Scheuer, 416 U.S. at 236. To survive a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the Time, Place, and Circumstances of the alleged occurrence. See Dorothy K. Winston & Co. vs. Town Heights Development, Inc., 376 F. Supp. 1214 (D. DC 1974).

### III.    Plaintiff Established 'Reasonable Expectation of Privacy

Plaintiff's original complaint established that she had a conversation inside a closed door office. The Statute requires a reasonable expectation of privacy for oral communications to be protected, an oral communication must be uttered by a person exhibiting an expectation that the communication is not subject to interception, under circumstances that justify that expectation. The statute provides that a right to privacy is the freedom from arbitrary and unlawful interference with privacy protected under the Fourth Amendment under the United States Constitution. The U.S. Supreme Court has defined search under the Fourth Amendment to be a government infringement of a person's privacy. See Rakas v. Illinois, 439 U.S. 128, 140-49 (1978).

An infringement or intrusion of that privacy occurs when the individual exhibits an actual subjective expectation of privacy and when that expectation is one that society is prepared to deem reasonable. See Katz v. United States, 389 U.S. 347 (1967).

**Judge Ricardo M. Urbina by his on order dated May 3, 2007, page 2**, affirmed
Plaintiff had a reasonable expectation of privacy....**"The plaintiff and defendant
Johnson [had a conversation in a closed door office] where plaintiff alleges that she
gave defendant Johnson "words of wisdom, examples of her life, advice, and quoted
a few Bible scriptures as examples." Id.** The statute provides that an aggrieved may
recover in accordance to 18 U.S.C. Section 119 - § 2510. An aggrieved person" means a
person who was a party to any intercepted wire, oral, or electronic communication or a
person against whom the interception was directed; See § 2521. Injunction. Probable
cause instructs a magistrate judge that baseless searches shall not proceed. See U.S. v.
U.S. District Court, 407 U.S. at 316.

The United States District Court, (D.C.) Office of Administrative Reporting
requires strict compliance to Title 18, United States Code, and Section 2519. Regulations
must comply in accordance with Title 18, U.S.C., Section 2519(3). Strict guidelines
require that a **[police officer]** or **[police informant]** is a party to the communication.
The U.S. District Court, Washington, D.C. requirement of one party consent is only
applicable to an Agent, Officer or Police Informant. Douglas Fahey and Jenekia Johnson
were neither.

Its unconscionable for a United States Judge by appointment under oath to
phantom or assert that some how an **unlicensed security guard without a court order
acting under the color of law has authority** to engage an unauthorized intern employed
by her aunt (nepotism) into an illegal interception of a United States Federal employees
oral conversation inside a closed door office.

## IV.   **STATUTORY FRAMEWORK TO LAWFUL INTERCEPT**

The statutory framework relies upon the United States Department of Justice

(DOJ) procedures approved by United States Attorney **strict** guidelines to Assistant U.S.

Attorneys, Federal Investigative agencies must adhere regarding intercepts of oral

communications. The Department of Justice (DOJ) guidelines provide **restrictions**, the

requirement that a high-level Department official specifically approve the use of these

types of electronic surveillance **[prior to an Assistant United States Attorney**

**obtaining a court order authorizing interception]** as well as emergency interception

procedures and restrictions on the disclosure and evidentiary use of information obtained

through electronic surveillance.  By enacting Title III in 1968, **[Congress prohibited**

**private citizens]** from using certain electronic surveillance techniques.

Plaintiff provided evidence with her complaint that the Metropolitan Police

Department for the District of Columbia confirmed that Douglas Fahey didn't have a

license; and the DOJ Criminal Division confirmed that Fahey didn't have or obtain a

required Court Order by the U.S. District of Columbia. See 18 U.S.C. § 2511.

The Wire and Electronic Communications Interception and Interception of Oral

Communications Act (formally known as the "Title III" Wiretap Act, 18 U.S.C §§ 2510-

2520,), requires a court order issued by a judge who must decide that there is probable

cause to believe that a crime has been, is being or is about to be committed.

Defendants Securiguard and USEC were negligent in the hiring, retention, and its

failure to screen its employees. Fahey acted outside the scope of the Securiguard and

USEC Services requirements by acting under the color of law while impersonating a U.S.

Federal agent in violation of Plaintiff's rights under the statute.

A.    **Authorization of Wire, Oral, and Electronic Interception**

DOJ USAM Section 9-7.100 require restrictions upon the use of electronic surveillance by law enforcement agents enacted in recognition of the restrictions against unlawful searches and seizures contained in the Fourth Amendment to the United States Constitution. See, e.g., Katz v. United States, 389 U.S. 347 (1967).

B.    **Title III's restrictive provisions**

Title III requires that Federal investigative agencies submit requests for the use of certain types of electronic surveillance (primarily the non-consensual interception of wire and oral communications). Specifically, in 18 U.S.C. § 2516(1), Title III explicitly assigns such review and approval powers to the Attorney General. Because there are **[severe penalties for the improper]** and/or unlawful use and disclosure of electronic surveillance evidence, including ***criminal, civil, and administrative sanctions***, as well as the suppression of evidence.

**Exclusion From Evidence**

The Wiretap Act provides broad and sweeping exclusionary rules 18 U.S.C. §2515. Plaintiff's conversation was held inside a closed door office (project room) as confirmed by Honorable Ricardo M. Urbina's order dated **May 3, 2007**. **See Supreme Court in Katz v. United States.''); Dorris v. Absher, 179 F.3d 420 (6th Cir. 1999)(coworkers in a small office had a reasonable expectation of privacy);** See the Matter of John Doe Trader Number One,894 F.2d 240 (7thCir. 1990).

**Wherefore**, Plaintiff has a right to proceed with her claims against named Defendants' malfeasance, gross negligence, retention after the fact, negligent hiring of Douglas R. Fahey (unlicensed) contractor whom acted outside the scope, acted under the color of law, and willfully impersonated a security guard under Securiguard and USEC Services contracts by which Plaintiff was harmed but for the negligence of Defendants.

Yolanda Gibson-Michaels
2210 Anvil Lane
Temple Hills, Maryland  20748
(301) 630-5062

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this <u>18th day of May 2007</u>, copies were mailed to:

<u>Copies to</u>:

Harvey A. Levin
Thompson Coburn LLP
1909 K Street, N.W. – Suite 600
Washington, DC  20006

David Zachary Kaufman, Esq.
Kaufman Law Firm
11350 Random Hills Road – Suite 800
Fairfax, Virginia  22030

Scott D. Helsel
Walton & Adams,
1924 Isaac Newton Square
Reston, Virginia  20190

Claire Whitaker, U.S. Attorney
555 4th Street, N.W. E-4204
Washington, D.C.  20530

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| YOLANDA C. GIBSON-MICHAELS | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) **Civil Action Nos. 1:06-CV-1938** | |
| | ) **Doc. Nos.: 5, 6, 13,18, 19, 23, 24, 25, 26** | |
| SECURIGUARD INCORPORATED et.al. | ) | |
| **Defendants** | ) | |

## <u>ORDER</u>

It is upon consideration of Plaintiff's Motion to Vacate Order Dated May 3,

2007, in the above reference case number 06-cv-1038, is hereby by Granted and fully

reinstated to provide Plaintiff her right to proceed on this _____ day of _____,

2007.

_____
Judge

Copies to:
Harvey A. Levin
Thompson Coburn LLP
1909 K Street, N.W. – Suite 600
Washington, DC  20006

David Zachary Kaufman, Esq.
Kaufman Law Firm
11350 Random Hills Road – Suite 800
Fairfax, Virginia  22030

Scott D. Helsel
Walton & Adams,
1924 Isaac Newton Square
Reston, Virginia  20190

Claire Whitaker, U.S. Attorney
555 4th Street, N.W. E-4204
Washington, D.C.  20530



# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## METROPOLITAN POLICE DEPARTMENT
### Security Officers Management Branch

January 11, 2005

Mrs. Yolanda C. Gibson-Michaels
1717 H Street Northwest  Room H-3081
Washington, D.C.  20001

Dear Mrs. Gibson-Michaels:

This letter will confirm your conversation on December 22, 2004, with Ms. Gray, staff member of the Security Officers Management Branch.  As previously stated, researching our files Mr. Douglass Fahey is not certified or pending certification through this branch as a Private Investigator.

It should also be noted that the Security Officers Management Branch has no jurisdiction on Federal contract sites.

If you have any additional questions or concerns, please feel free to contact a staff member on (202) 671-0500.

Sincerely,

Sergeant Peter C. McGrath
Assistant Branch Manager

(2-N514-6117 CFAX)

November 9, 2005

D.C. Wire Tap Office
Washington, D.C.

Re: **Expedited FOIA Request – Wire tap on Yolanda Gibson-Michaels**

In accordance to the Freedom of Information Act (FOIA), immediately upon request, provide a copy of:

(1) The wire tap court order secured by Douglas Fahey, contract investigator hired by the Federal Deposit Insurance Corporation (FDIC); contract by Securiguard on **April 14, 2004** and **April 15, 2004** to conduct a wire tap against Yolanda C. Gibson-Michaels on April 15, 2004.

(2) Provide a copy of all wire tap request by Douglas Fahey, contractor with securiguard for years 2003, 2004, and 2005.

(3) All copies of wire tap request by Federal Deposit Insurance Corporation against Yolanda C. Gibson-Michaels on April 14, 2004 and April 15, 2004.

(4) Provide a copy of sworn (affidavit) statement of Douglas Fahey before the U.S. Superior Court magistrate to conduct a wire tap against Yolanda Gibson-Michaels on April 14, 2004 and April 15, 2004.

(5) Provide a copy of sworn (affidavit) statement of an Federal Deposit Insurance Corporation (FDIC) official before the U.S. Superior Court magistrate to conduct a wire tap against Yolanda Gibson-Michaels on April 14, 2004 and April 15, 2004.

Send request to the attention of   Yolanda Gibson-Michaels
                                    2210 Anvil Lane
                                    Temple Hills, Maryland  20748
                                    - 301 650-5062



**U.S. Department of Justice**

**Criminal Division**

~~Office of Enforcement Operations~~

~~Washington, D.C. 20530~~

CRM-200501151P

Ms. Yolanda Gibson-Michaels
2210 Anvil Lane
Temple Hills, Maryland 20748

DEC 8 2005

Dear Ms. Gibson-Michaels:

This is in response to your request of November 9, 2005, pursuant to the Privacy Act, for access to records concerning you and the wire tap request/order described in paragraphs 1-5 of your request.

We did not find any Criminal Division records within the scope of your request.

If you consider this response to be a denial of your request, you have a right to an administrative appeal of this determination. Department regulations provide that such appeals must be filed within sixty days of your receipt of this letter. 28 C.F.R. 16.45. Your appeal should be addressed to: Co-Director, Office of Information and Privacy, Flag Building, Suite 570, United States Department of Justice, Washington, D.C. 20530. Both the envelope and the letter should be clearly marked with the legend "FOIA Appeal." If you exercise this right and your appeal is denied, you also have the right to seek judicial review of this action in the federal judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include, in your letter to the Office of Information and Privacy, the Criminal Division file number that appears above your name in this letter.

Sincerely,

Thomas J. McIntyre
by KNS

Thomas J. McIntyre, Chief
Freedom of Information/Privacy Act Unit

Conspiracy, Illegal by unlicensed Investigator

**FILE NUMBER: WASHINGTON**                    Incident Number: 0-0000000186

Jenckes
Johnson
←

Douglas
Fahey

Unlicensed
Contractor

Sony told
will be sued
Sony had
no right

to give FDIC
or Selwyned
permission
to use it

Sony Cyber
they didn't
Sony didn't
have a
court order
to approve sly
tape (legal)
Interloper by
unlicensed
contractor

I again contacted JOHNSON and arranged to meet her in the lobby of 1717 H St. NW at 12:10Hrs. on 15 April 2004. We met at that time and then moved to vacant FDIC office space on the 1st floor. I placed a ~~Sony cassette recorder with a 90 minute tape (45+ minutes per side)~~ into her purse. I attached an ~~omni directional power condenser microphone to the recorder and~~ positioned the microphone so that it extended slightly, but unobtrusively from her purse. I suggested the way in which she could begin a conversation with GIBSON-MICHAELS might be to tell her she had been thinking about what she told her the day before. JOHNSON then advised me that just before coming downstairs to meet me in the lobby, she walked past GIBSON-MICHAELS' cube, and GIBSON-MICHAELS poked her head out and asked her if she had thought about what they talked about. JOHNSON told me she told GIBSON-MICHAELS no, that she was trying not to think about it. I then allowed JOHNSON to look at some notes I had handwritten on a piece of paper with potential ideas on how to begin a conversation with GIBSON-MICHAELS. After looking at the suggestions, JOHNSON came up with her own idea. She asked if she could just go to her and tell her that she felt threatened by her the day before. She said that was how she really felt. I agreed that expressing her true feelings would probably be the easiest way for her to succeed in beginning a dialogue. I turned the recorder to the "record" position and recorded a brief introduction, saying the date (April 15) and the time was 12:20Hrs. and that it was the beginning of the tape. At that time, JOHNSON left the room enroute to the 3rd floor of the building to locate GIBSON-MICHAELS. The tape subsequently revealed that approximately 10 minutes after leaving the room, JOHNSON located GIBSON-MICHAELS and began a conversation with her. The tape continued to run and record their conversation for approximately the next 37 minutes. I located JOHNSON at 13:20Hrs. on the third floor and accompanied her back to the 1st floor where I then recovered the recorder and tape from her purse. JOHNSON reported that the tape ended before their conversation did. She reported that at the end of the conversation, [off tape] GIBSON-MICHAELS hugged her. JOHNSON remarked that GIBSON-MICHAELS was "a lot nicer than yesterday." I asked JOHNSON if there were any witnesses to the conversation they just had and she stated, no.

Initiated by
James Lank
A Bit Later
I asked Jan
did she feel
Threatened 30
Excused
sounds!!

On 15 April 2004, at 13:44Hrs., GIBSON-MICHAELS sent JOHNSON and BEARD an e-mail with a subject, LIE DETECTOR TEST. The e-mail read:
        "This is a suggestion to get to the truth regarding your situation. Lie Detector test are 100 percent accurate. You both might want to consider taking a lie detector test; or volunteer since both of you are 100% certain that it wasn't you. Also, taking a lie detector to determine that it was someone else other than yourselves will give both of you a chance to resume your good friendship. Or the investigator might request that you are both tested regarding the facts surrounding your situation. The test only cost sometimes between $20.00 or $40.00 dollars.
        FDIC might be able to administer the test free. Since there is a possibility that there could have been someone other than yourselves; then you both should take the test together or separate and apart. If you are telling the TRUTH...then there shouldn't be a problem with taking a LIE detector test to save your friendship. (SMILE)... " (end of e-mail)

On 15 April 2004, at 14:11Hrs., GIBSON-MICHAELS sent JOHNSON an internet link regarding polygraphs. The subject was, Information regarding the Polygraph (Lie Detector Test). JOHNSON forwarded that message to me on 19 April, stating that she wasn't able to review the link due to a virus warning.

On 16 April 2004, at 10:20Hrs., I left a voice message for JOHNSON to call me. At 14:20Hrs., I had a telephone conversation with her. I asked her to reflect on the conversation she had with GIBSON-MICHAELS the day before and tell me how she was feeling about all of this. JOHNSON stated she wouldn't be as comfortable with GIBSON-MICHAELS from ....on and

ISA Court on 7/18/06 7/17/06 and Sent certified mail to FBI and whitehouse

INDEX 12/07/05—

[A] Dupicate Recording of Electronic Eavs Drop Tape 04/15/04 [B]

SUBJECT:

DATE:

**CERTRON**

FDIC Lied to Federal Probation, Tapes were NOT Lost!!

Sony Corp did not give my permission to use or approve FDIC to use a Sony tape recorder.

Sony had no right to approve the FDIC, Douglas Fahey or Jennekin Johnson to engage in to illegal intercepts of my oral communicats over a Bible Verse.

FDIC's wrote Descrip tion of illegal Intro. of oral c.

FDIC refuse over Original tape recording by unauthorized contras w/out by order — Required by Law!!

Gibson michaels Supered fun duty 5-days Based on Bible Quote inside a closed box office. ( Reasnoble Expection of Privacy ress?.. )



**Incident Number: 0-0000000186**      **File Number: WASHINGTON**      **Security Level: FDIC Security**

### Incident Details

| | | | |
|---|---|---|---|
| **Category:** | Threats | **Subcategory:** | By Employee |
| **Type:** | Workplace Violence | **Loss/DamageType:** | |
| **Security Level:** | FDIC Security | **Status:** | Ref. to Management |
| **Police File:** | No | **Police File Number:** | |
| **Occurred From Date:** | 4/14/2004 | **Occurred From Time:** | 11:22:00AM |
| **Occurred To Date:** | | **Occurred To Time:** | |
| **Reported Date:** | 4/14/2004 | **Reported Time:** | 11:59:00AM |
| **Reporting Person:** | Fahey, Douglas | **Supervisor:** | |
| **Org. Rollup 1:** | | **Org. Rollup2:** | **Org. Rollup3:** |
| **Building Name:** | 1717 H St. NW | | |
| **Legal Description:** | | **Number:** | |
| **Local Phone Number:** | | | |
| **Street Address:** | | | |
| **City:** | | | |
| **Country:** | | **State/Province:** | |
| **Geo. Rollup1:** | | **Zip/Postal Code:** | |
| **Location:** | 3rd Floor | **Geo. Rollup2:** | **Geo. Rollup3:** |
| **Location Details:** | | | |

**Incident Summary:** Intern felt threatened by words used by employee.

*(handwritten)* Feelings of Threat induced by James T. Lantelme Frame up of Yolanda Gibson Michael's on April 14, 2004.

### Incident Persons

| | | | |
|---|---|---|---|
| **Person Name:** | Gibson-Michaels, Yolanda | **Salutation:** Ms. | **Person Status:** |
| **Incident Person Type:** | Employee | **Company Employee:** Yes | **Barring Notice:** No |
| **Comments:** | | | |

### Incident Person Details    (For more Person Details please see the Person Profile Report)

| | | | |
|---|---|---|---|
| **Sex/Gender:** | Female | **Date of Birth:** | **Age:** |
| **Home Address:** | | | |
| **City:** | | | |
| **Country:** | | **State/Province:** | |
| **Home Phone:** | | **Zip/Postal Code:** | |
| **Clothing Type:** | | **Business Phone:** | |
| **Feature Type:** | | **Clothing Description:** | |
| | | **Feature Description:** | |
| **Injured:** | No | **Hospitalized:** | No |
| **Injury Type:** | | **Injury Description:** | |
| **Hospital Name:** | | **Treated By:** | |
| **First Aid:** | | **Cause:** | |
| **Work Time Lost From:** | | **Work Time Lost To:** | |

**FILE NUMBER: WASHINGTON**                          **Incident Number: 0-0000000186**

---

After asking GIBSON-MICHAELS to explain some of the specific inconsistencies, THORSTEINSON stopped the interview at 12:55Hrs. and asked for my assurance that nothing from this interview would be used in any potential future criminal proceeding against GIBSON-MICHAELS. I was not able to give him that assurance and we all agreed to contact James LANTELME regarding that issue. I contacted LANTELME by telephone and put him on speakerphone. THORSTEINSON addressed this issue with LANTELME, who stated he would checked with a labor relations attorney and call back. At 13:05Hrs., LANTELME called back and while on speakerphone, said that Jimmy LAWRENCE gave an assurance that nothing from this administrative interview would be used against GIBSON-MICHAELS in any future criminal proceeding. This assurance satisfied THORSTEINSON and the interview resumed.

In all, I addressed the following eleven questions from my interview with GIBSON-MICHAELS. Reference information as to where the relevant transcript information can be found on the tape is included. KEY: JJ = Jenekia Johnson; YGM = Yolanda Gibson-Michaels.

*40. Didn't she tell you she felt very threatened by you because you said that if nothing happens to her, then things would roll over to Jayda.*
ANS: No.

**Approximate tape reference information**
Tape Counter Number: 112
Time into tape: 11 minutes 58 seconds

*[handwritten: Privates Bible Discussion inside a closed door OFFICE]*

**Relevant Transcript:**
JJ: Ah, I just came here only because I thought about everything you said yesterday, and I was upset yesterday but I just tried not to show it. I felt very threatened yesterday you believe it or not. When you kept um using Jayda (YGM: uh-huh) you know, saying that things would roll over to me if nothing happens to me if they would roll over to Jayda which I know I heard plenty of times but it's like I just felt very very threatened because it's like you know how you feel inside but I know what is the truth. I know that everything you're saying, yes it sounds, every, I mean, okay, you said...

**DISCUSSION on QUESTION 40:**
After listening to the tape, GIBSON-MICHAELS maintained her answer to the question was no, saying that JOHNSON said "believing me or not."

*39. In fact Mrs. Gibson-Michaels, Ms. Johnson told you that she felt very threatened by you didn't she?*
ANS: No. She never felt threatened by me. She said she felt threatened by her sins. I don't know what sins she was talking about.

**Approximate tape reference information**
Tape Counter Number: 112
Time into tape: 11 minutes 58 seconds

**Relevant Transcript:**
JJ: Ah, I just came here only because I thought about everything you said yesterday, and I was upset yesterday but I just tried not to show it. I felt very threatened yesterday by you

18

**FILE NUMBER: WASHINGTON**

Incident Number: 0-0000000186

*[handwritten in left margin: Bible verse Discussion by "myohan" - not by Rebe]*

*[handwritten in right margin: Frame up by FDIC]*

believe it or not. When you kept um using Jayda (YGM: uh-huh) you know, saying that things would roll over if nothing happens to me if they would roll over to Jayda which I know I heard plenty of times but it's like I just felt very very threatened because it's like, you know how you feel inside but I know what is the truth. I know that everything you're saying, yes it sounds, every, I mean, okay, you said...

## DISCUSSION on QUESTION 39:

After listening to the tape, GIBSON-MICHAELS initially maintained her answer was still no to this question. She first said she believed JOHNSON told her she felt very very threatened yesterday "by you believing me or not" instead of "believe it or not." After review of the tape, SCHULL believed JOHNSON said "believe it or not." GIBSON-MICHAELS subsequently changed her answer to, "Yes, she told me that."
NOTE: No where on the tape does JOHNSON talk about her sins or feeling threatened by anything or anyone other than GIBSON-MICHAELS. .

*31. Did you tell Ms. Johnson that you believed Hecht's could have been threatening her for the money she owed them?*
ANS: No.

Approximate tape reference information
Tape Counter Number: 136 and 147
Time into tape: 14 minutes 28 seconds and 15 minutes, 29 seconds

Relevant Transcript (136):
YGM: I was thinking it could have been Hecht's. Cause sometimes people [indistinguishable] threaten people?
JJ: You mean Hecht's?
YGM: Yea, I was thinking. Maybe, I said maybe she had to pay her Hecht's? Cause I don't, Kristian was saying you owe six hundred dollars to Hecht's.

Relevant Transcript (147):
YGM: Okay but you know how everyone's going to look at things the way I look at things. I look at this in fact. The fact well the only thing I'm thinking well maybe you could've gotten into a situation where Hecht's was threatening you or something (indistinguishable)
JJ: No, cause I'm not, haven't been late on a payment and I have never, I haven't been in that situation.

## DISCUSSION on QUESTION 31:

After listening to the tape, GIBSON-MICHAELS maintained her answer to that question was still no. She said the question wasn't worded properly; that I should have used the word "situation" in my question to her.

*14. Did you suggest to Ms. Johnson that she take a $300 loan from the credit union and pay back Ms. Beard?*
ANS: No.

Approximate tape reference information

19

**FILE NUMBER: WASHINGTON**                    Incident Number: 0-0000000186

conversation, Yolanda asked "did I think about what she said to me the day before", this was to confess to something that I did not do. I also told her that I went home and tried to think nothing of it.

During a conversation that I had with you 10 minutes later, you asked me was there any contact with Yolanda, from the last time we had spoke. I told you then, that I had just ran into her before I met with you. You asked me what was said by her, and I told you then, that all she said was "did I think about what she said yesterday and I said No". You then gave me a piece of paper which had writing on it, on how you wanted me to approach Yolanda. While you were placing the wire in my purse, you asked me to think of another way of approaching Yolanda. My way was to say hello Yolanda, I'm sorry that I lied to you, and yes I did think about what you has said to me yesterday." (end of e-mail)

Therefore, in summary, the "lie" JOHNSON was referring to on the tape referenced her telling GIBSON-MICHAELS that she had not thought about their previous conversation, when in fact, she had thought about it.

The original tape recording and original statement by GIBSON-MICHAELS were stored as evidence in the Operations Center.

### CONCLUSION

There is evidence to suggest that GIBSON-MICHAELS did make inappropriate comments to JOHNSON, which supports her allegations that she felt threatened by GIBSON-MICHAELS. A copy of this report, a copy of the recorded tape, and a copy of GIBSON-MICHAELS' statement were provided to LANTELME on 3 May 2004.

[handwritten left margin: FDIC "4 USE" illegal wire 18 USC 119]

[handwritten right margin: Bible verse saying I love you given to me in the postal business inside a closed door office is not a print a threat]

[handwritten: Bible verse inside a closed door office (privacy) is not inappropriate. James T. Lantelme manifested introduced feelings of threat to Frame-up Yolanda Gibson-Michaels in Violation of 18 U.S.C.]

*[handwritten margin notes: "FDIC/defendants violated", "FDIC Reported to U.S. Congress & Senate", "FDIC violated", "Defendants violated"]*

## Table 1
### Jurisdictions With Statutes Authorizing the Interception of Wire, Oral, or Electronic Communications Effective During the Period January 1 Through December 31, 2004*

| Jurisdiction | Statutory Citation** | Reported Use of Wiretap in 2004 | Number of Orders Authorized in 2004 |
|---|---|---|---|
| Federal | 18:2510 - 2520 | | |
| Alaska | 12.37 | No | - |
| Arizona | ARS 13-3010 - 13-3018 | Yes | 730 |
| California | Penal Code Sections 629.50-629.98 | No | - |
| Colorado | 16-15-102 | Yes | 10 |
| Connecticut | 54-41a - 54-41t | Yes | 180 |
| Delaware | 11 Del.C.Chap.24 | No | - |
| District of Columbia | 23-541 - 23-556 | No | - |
| Florida | 934.01 - 934.10 | Yes | 4 |
| Georgia | 16-11-64 | No | - |
| Hawaii | 803-41 - 803-48 | Yes | 72 |
| Idaho | 18-6701 - 18-6710 | Yes | 33 |
| Illinois | 720 ILCS SEC.5/108B | No | - |
| Indiana | 35-33.5-3-1 | No | - |
| Iowa | 808B.1 - 808B.9 | Yes | 21 |
| Kansas | 22-2514 - 22-2516 | No | - |
| Louisiana | Act No. 121 3B No.233 15:1308(A)(2) | No | - |
| Maine | 15 M.R.S.A. Sec 709 et seq. | No | - |
| Maryland | 10-401 - 10-411 | No | - |
| Massachusetts | 272:99 | No | - |
| Minnesota | 626A.01 - 626A.21 | Yes | 34 |
| Mississippi | 41-29-501 | Yes | 23 |
| Missouri | 33-542.400 - 542.424 | Yes | 1 |
| Nebraska | 86-290 - 86-294 | Yes | 3 |
| Nevada | 179.410 - 179.515, NRS 200.620 | No | - |
| New Hampshire | 570-A:1 - A:11 | No | - |
| New Jersey | 2A:156A-1 - 156A-34 | Yes | 8 |
| New Mexico | 30-12-2 - 30-12-11 | Yes | 13 |
| New York | CPL Article 700 | Yes | 144 |
| North Carolina | N.C.G.S. 15A-286 | No | - |
| North Dakota | 29-29.2 | Yes | 347 |
| Ohio | 2933.51 - 2933.66 | No | - |
| Oklahoma | 13 O.S. 176.1 - 176.14 | No | - |
| Oregon | ORS 133.721 - 133.739 | Yes | 1 |
| Pennsylvania | 18 Pa.C.S. Sec 5701-5726 | Yes | 16 |
| Rhode Island | 12-5.1-1 - 12-5.1-16 | No | - |
| South Carolina | SC Code Section 17-30-10 et seq. | Yes | 32 |
| South Dakota | 23A - 35A | No | - |
| Tennessee | 40-6-301 - 40-6-311 | No | - |
| Texas | Crim. Proc. Sec. 18.20 | No | - |
| Utah | 77-23a-1 - 77-23a-16 | Yes | 36 |
| Virgin Islands | 5 V.I.C. Sec 4101-4107 | No | - |
| Virginia | 19.2-61 | No | - |
| Washington | 9.73 | No | - |
| West Virginia | 62-1D-11 | No | - |
| Wisconsin | 968.27 - 968.33 | No | - |
| Wyoming | 7-3-701 - 7-3-712 | Yes | 2 |
| | | No | - |

* Pursuant to provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2518.
** Includes only those jurisdictions that enacted legislation during or before calendar year 2004.

14

*FDIC*
*Ignored Law*

**Gibson-Michaels, Yolanda C.**

| | |
|---|---|
| **From:** | Lawrence, James R. |
| **Sent:** | Wednesday, June 02, 2004 5:33 PM |
| **To:** | Gibson-Michaels, Yolanda C. |
| **Subject:** | RE: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS |

Thanks for the information.    I enjoyed speaking with you.

-----Original Message-----
**From:** Gibson-Michaels, Yolanda C.
**Sent:** Wednesday, June 02, 2004 5:23 PM
**To:** Lawrence, James R.
**Subject:** FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

**Subject:** RE: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

Additional information...

# US federal wiretapping laws as of Jan. 2000

Contents:

- CRIMES:
  - <u>18 USC, PART I, CHAPTER 119</u> - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS (includes 18 USC 2510-2522)
  - <u>18 USC, PART I, CHAPTER 121</u> - STORED WIRE AND ELECTRONIC COMMUNICATIONS AND TRANSACTIONAL RECORDS ACCESS (incl. 18 USC 2701-2711)
- CRIMINAL PROCEDURE:
  - <u>18 USC, PART II, CHAPTER 205</u> - SEARCHES AND SEIZURES (incl. 18 USC 3117, "Mobile tracking devices"; non-wiretapping sections elided)
  - <u>18 USC, PART II, CHAPTER 206</u> - PEN REGISTERS AND TRAP AND TRACE DEVICES (incl. 18 USC 3121-3127)
- TELEGRAPHS, TELEPHONES, AND RADIOTELEGRAMS
  - <u>47 USC, CHAPTER 9</u> - INTERCEPTION OF DIGITAL AND OTHER COMMUNICATIONS (incl. 47 USC 1001-1021; most CALEA provisions are in this part)

**From:**      Bovenzi, Erica F.
**To:**        Gibson-Michaels, Yolanda C.
**Sent:**      Monday, June 21, 2004 4:57 PM
**Subject:**   Read: FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS

Your message

**To:**        Bovenzi, Erica F.
**Subject:**   FW: CHAPTER 119 - WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION AND INTERCEPTION OF ORAL COMMUNICATIONS
**Sent:**      6/9/2004 3:20 PM

was read on 6/21/2004 4:57 PM.

1

*my Rgts to Incriminate Self refuse*
*my right to An Attorney*

**FDIC**
Federal Deposit Insurance Corporation

Legal Division

April 21, 2004

**TO:**      Yolanda Gibson-Michaels
             Information Specialist

**FROM:**    James T. Lantelme
             Assistant General Counsel

*Con director*

**SUBJECT:** Mandatory Attendance at Investigatory Meeting

Mr. Douglas Fahey, an investigator with the Division of Administration, notified you by an e-mail on Monday, April 19, 2004, of his need to meet with you for purposes of an investigative interview. Via return e-mail, you stated that "I will not subject myself to any form of investigatory interviews". Instead, you provided him with a written statement.

Please be advised that attendance at this investigative interview is <u>mandatory</u>. As a member of the bargaining-unit, you may bring a union representative to the interview. By this memorandum, <u>I direct you</u> to meet with Mr. Fahey at his office for purposes of the interview he has requested, and <u>I direct you</u> to cooperate in the interview. He is available on Friday, April 23rd at 2:00pm. <u>I direct you</u> to contact him to confirm the time for your appointment.

Failure to attend the interview and cooperate will result in disciplinary action being taken against you.

*Threat*

*Threat also to incriminate illegal*

Cc:  Douglas Fahey
     William Kmetz
     Robert Wooding
     Carl Polvinale

*Denied Due Process !!*

*1st, 2nd, 4th Due Process, procedural Due Pross Miranda Rights*

# FDIC

**Federal Deposit Insurance Corporation**

April 26, 2004

**TO:**    Yolanda Gibson-Michaels
Information Specialist

**FROM:**    James T. Lantelme
Assistant General Counsel

**SUBJECT:**    Mandatory Attendance at Investigatory Meeting

Due to an excused absence, you were unable to attend an investigative interview with Mr. Douglas Fahey, an investigator with the Division of Administration, scheduled for Friday, April 23rd at 2:00pm. Mr. Fahey has notified you by an e-mail on Friday, April 23, 2004, that he has rescheduled your interview to Wednesday, April 28th, 2004 at 9:30am at his office in the F Street building, room 1C27C.

Please be advised that attendance at this investigative interview is mandatory. As a member of the bargaining-unit, you may bring a union representative to the interview. By this memorandum, I direct you to meet with Mr. Fahey at his office for purposes of the interview he has requested, and I direct you to cooperate in the interview. I direct you to contact him to confirm the time for your appointment.

Failure to attend the interview and cooperate will result in disciplinary action being taken against you.

Cc:  Douglas Fahey
William Kmetz
Robert Wooding
Carl Polvinale

# Gonzales Hospital Episode Detailed

### *Ailing Ashcroft Pressured on Spy Program, Former Deputy Says*

By DAN EGGEN and PAUL KANE
*Washington Post Staff Writers*

On the night of March 10, 2004, as Attorney General John D. Ashcroft lay ill in an intensive-care unit, his deputy, James B. Comey, received an urgent call.

White House Counsel Alberto R. Gonzales and President Bush's chief of staff, Andrew H. Card Jr., were on their way to the hospital to persuade Ashcroft to reauthorize Bush's domestic surveillance program, which the Justice Department had just determined was illegal.

In vivid testimony to the Senate Judiciary Committee yesterday, Comey said he alerted FBI Director Robert S. Mueller III and raced, sirens blaring, to join Ashcroft in his hospital room, arriving minutes before Gonzales and Card. Ashcroft, summoning the



James Comey, above, testified of a hospital visit to John Ashcroft.

strength to lift his head and speak, refused to sign the papers they had brought. Gonzales and Card, who had never acknowledged Comey's presence in the room, turned and left.

The sickbed visit was the start of a dramatic showdown between the White House and the Justice Department in early 2004 that, according to Comey, was resolved only when Bush overruled Gonzales and Card. But that was not before Ashcroft, Comey, Mueller and their aides prepared a mass resignation, Comey said. The domestic spying by the National Security Agency continued for several weeks without Justice approval, he said.

"I was angry," Comey testified. "I thought I just witnessed an effort to take advantage of a very sick

*See* GONZALES, *A4, Col. 1*

March 10, 2004 U.S. Justice Department terminated domestic surveillance. as Illegal!/

2007 DOJ represents the FDIC in the US District Court, Washington in violation of 18 USC-119 CASE NOS: 06-CV-1940, 33, 38 + 39.

cc: US Senate
congress
DOJ
OFFICE OF Special Counsil
Ethics comittee Senate/House

NO MAN IS Above the law!!

No MAN ABOVE
The LAW !!

# Judge Rules Against Wiretaps

## NSA Program Called Unconstitutional

By Dan Eggen and Dafna Linzer
Washington Post Staff Writers

A federal judge in Detroit ruled yesterday that the National Security Agency's warrantless surveillance program is unconstitutional, delivering the first decision that the Bush administration's effort to monitor communications without court oversight runs afoul of the Bill of Rights and federal law.

U.S. District Judge Anna Diggs Taylor ordered a halt to the wiretap program secretly authorized by President Bush in 2001, but both sides in the lawsuit agreed to stay that order until a Sept. 7 hearing. Legal scholars said Taylor's decision is likely to receive heavy scrutiny from the U.S. Court of Appeals for the 6th Circuit, even as the Justice Department yesterday criticized her ruling as poorly reasoned.

Ruling in a lawsuit brought by the American Civil Liberties Union and other advocacy groups in the Eastern District of Michigan, Taylor said that the NSA wiretapping probe on American communications by potential terrorists violates privacy and free speech rights and the constitutional separation of powers among the three branches of government. She also found that the wiretapping violates the Foreign Intelligence Surveillance Act, which sets forth the methods to provide judicial oversight of clandestine surveillance within the United States.

"It was never the intent of the framers to give the president such unfettered control, particularly where his actions blatantly disregard the parameters clearly enumerated in the Bill of Rights," Taylor wrote in her 43-page opinion. " ... There are no hereditary kings in America and no powers not created by the Constitution. So all 'inherent powers' must derive from that Constitution."